HIGGINS MANUFACTURING CO. v. A. S. SPIESS SALES CO., ET AL.

(November 13, 1928. Opinion and Decree.)

Miller, Miller & Fletchinger, of New Orleans, attorneys for plaintiff and appellee.

J. D. Nix, Jr., and W. W. Wright, of New Orleans, attorneys for defendants and appellants.

JANVIER, Judge ad hoc. Higgins Manufacturing Company, through its salesman, contracted to deliver to A. S. Spiess Sales Company, a partnership composed of Alvin

S. Spiess and E. A. Spiess, three hundred cases of merchandise known as Higgins Nut Product. The goods were to be paid for at 23 cents per pound, f.o.b. New Orleans—one-third twenty days from date of invoice, one-third forty days from date of invoice, and one-third sixty days from date of invoice. The contract contained the following provision:

"Exclusive Agent in Louisiana
"Distributor to reship to Mobile, Ala., territory.
"Distributor to reship to Little Rock, Arkansas.
"Distributor to reship to Mississippi."

The goods were delivered, apparently, during the latter part of September, 1924. The total price was $2,277.00.

Higgins Nut Product, according to the evidence, is a butter substitute on the order of oleomargarine, and is used by bakers and cake-makers instead of butter.

On the 19th of December—or nearly three months after the receipt of the goods—the defendants remitted $759.00, being the amount due as the first installment. Up to that time, and in fact until after that time, no complaint of any kind was made as to the quality or condition of the goods.

As no further payments were forthcoming, the plaintiff commenced correspondence with the defendants in an effort to secure the balance of the purchase price. It was then, for the first time, that the contentions which defendants have set up in this suit, were raised by them.

Their defense is that the goods were not up to the sample, and that they were therefore not able to sell them, and furthermore that only fifty cases were actually bought by them, and that the balance was really shipped to them on consignment, they to attempt to sell it for the plaintiff on a 5 per cent commission basis.

With reference to the first contention, it appears there was nothing in the contract which required the product to be of a particular grade or quality, and as the contention was not made until more than three months after the receipt of the goods, and until nearly a hundred cases of it had been sold, we are of the opinion that this defense should not be allowed to prevail, particularly as the merchandise sold was highly perishable, and its condition later on—if in fact it was in bad condition—may have been due to the treatment accorded it by the defendants. At any rate, the fact that it was received without complaint, and that no complaint was made for more than three months, is very persuasive evidence that it was in sound merchantable condition when received by defendants.

As to the second defense that 250 cases of the article were shipped on consignment and really remained the property of the plaintiff, it seems to us that this defense should not be allowed to prevail for several reasons. First, and foremost, the contract itself makes no such provision, but appears as an outright sale of 300 cases by the plaintiff to the defendants. Defendants argue that that portion of the contract reading:

"Exclusive Agent in Louisiana.
"Distributor to reship to Mobile, Ala., territory.
"Distributor to reship to Little Rock, Arkansas.
"Distributor to reship to Mississippi."

was put in because plaintiff's salesman told them that he would arrange for them to reship to certain dealers in the territory mentioned, and also to Dallas, Texas. Plaintiff avers that that part of the contract meant nothing more than that defendant had the right to sell the goods in the territories mentioned if it could find

purchasers. This latter interpretation seems to us to be the one plainly intended at the time the contract was made. In our judgment evidence tending to contradict or to vary the contract should not have been admitted, as the contract is plain and unambiguous and needs no explanation or interpretation.

If, however, there is in the contract on this feature anything ambiguous, the evidence as a whole falls far short of convincing us that the defendants understood or believed that 250 cases of the article were being shipped them on consignment. In fact, as late as December 1, 1924, after they had had the goods in their possession more than two months, the defendants wrote a letter to the plaintiffs in which they stated that, in an effort to put the product on the market, they had cut the price two cents a pound. It is evident that they would not have been able to do this without first obtaining the authorization of the plaintiff, if the goods remained the property of the plaintiff and had merely been shipped to the defendants on consignment.

The entire file of correspondence in the record convinces us that the defendants are not in good faith in their various defenses.

Plaintiff argues that the trial court erred in not rendering judgment on the pleadings. We are not at all convinced that the trial court was not in error in this regard, but as the whole record is before us, and as the same result may be obtained by affirming the judgment of the trial court, we see no reason to do otherwise.

Although the question in this case as to whether damages for frivolous appeal should be allowed is a very close one, we do not feel justified in awarding them, except in cases where the appellant or his attorney knew, or ought to have known, that there was no substantial reason for believing that there was error in the judgment of the lower court; and we are not quite convinced in this case that the facts would justify us in awarding these damages.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, at the cost of appellant.